UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EDWARD OTTO KIRCHOFF,

                         Plaintiff,      **No. 1:15-cv-00745(MAT)**
                                                  **DECISION AND ORDER**

      -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                         Defendant.

---

## INTRODUCTION

Represented by counsel, Edward Otto Kirchoff ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On July 17, 2012, Plaintiff filed applications for DIB and SSI, alleging disability beginning November 29, 2010, due to depression, a learning disability, and high blood pressure. T.237-48, 299.[1] After these applications were denied, T.143-66, Plaintiff

---

[1] Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

requested a hearing. On November 5, 2013, administrative law judge Wallace Tannenbaum ("the ALJ") conducted a hearing via videoconference, T.109-23, at which Plaintiff appeared with his attorney and testified. Plaintiff's father also appeared and testified on Plaintiff's behalf. On January 4, 2014, the ALJ issued an unfavorable decision. T.110-17. Plaintiff requested review by the Appeals Council, which was denied on June 24, 2015, T.1-8, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely filed this action.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff has filed a reply brief. The parties have comprehensively summarized the administrative transcript in their briefs, and the Court adopts and incorporates these factual summaries by reference. The Court will discuss the record evidence in further detail below, as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

At step one of the sequential evaluation, see 20 C.F.R. §§ 404.1520(a), 416.920(a), the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. T.112. At step two, the ALJ determined that Plaintiff has a

"severe" impairment of a learning disability, but had not established that his other medical conditions (high blood pressure, low potassium, and hypercholesterolemia) were "severe." T.112-13. As to Plaintiff's alleged depression, the ALJ found that it had not been diagnosed by an acceptable medical source and therefore did not qualify as a "severe" impairment.

At step three, the ALJ found that Plaintiff's impairment did not meet or equal any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix I. T.113-14. The ALJ proceeded to find that Plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels, but is restricted to performing "simple, rote work tasks involving 1-2 step instructions." T.114-17.

At step four, the ALJ determined that Plaintiff retained the ability to perform his past relevant work as a forklift operator, as he actually performed that job, and as it is generally performed in the national economy. Based on this step four finding, the ALJ terminated the sequential evaluation and entered a finding of "not disabled." T.117.

## SCOPE OF REVIEW

When considering a claimant's challenge to the Commissioner's decision denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record.

See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), but "defer[s] to the Commissioner's resolution of conflicting evidence." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted)). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

### I. Step Two Error

Plaintiff first contends that the ALJ erred by failing to find that attention deficit hyperactivity disorder ("ADHD") was a "severe" impairment at step two.

"Impairments" are "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory techniques." 20 C.F.R. §§ 404.1508, 416.908. "Severe" impairments are those that "significantly limit" physical or mental abilities to do basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not

significantly limit your physical or mental ability to do basic work activities."); see also Social Security Ruling ("SSR") 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, at *3-4 (S.S.A. 1985). "The phrase 'significantly limits' is not synonymous with 'disability.' Rather, it serves to 'screen out de minimis claims.'" Showers v. Colvin, No. 3:13-CV-1147(GLS), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015) (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . . 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

Plaintiff argues that he was diagnosed with ADHD by certified physician's assistant Emily Herman ("PA-C Herman"). See Pl's Mem. at 1. However, a physician's assistant is not an "acceptable medical source" but rather is considered an "other source" under the Regulations. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing "acceptable medical sources"); 404.1513(d)(1), 416.913(d)(1) (identifying physician's assistants as "other sources"). Thus, as the Commissioner argues, PA-C Herman is not qualified to diagnose a psychological condition for purposes of establishing that Plaintiff has a particular impairment. See 20 C.F.R. §§ 404.1513(a), 416.913(a) ("We need evidence from acceptable medical

sources to establish whether you have a medically determinable impairment(s).").

Plaintiff also argues that Thomas Seibert, M.S. ("Mr. Seibert") is a "licensed psychologist" and therefore is an acceptable medical source who diagnosed him with ADHD in August of 2012. See T.461-82. As an initial matter, Plaintiff has mischaracterized the record. Although he states that Mr. Seibert is a licensed psychologist, Mr. Seibert is a actually *limited* license psychologist, licensed and practicing in the State of Michigan. T.481. As a matter of Michigan State law, a limited license psychologist may only practice under the supervision of a fully licensed psychologist.[2] The Commissioner's regulations do not include "limited license psychologists" as "acceptable medical sources." See 20 C.F.R. § 404.1513(a)(2), 416.913(a)(2) ("Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only. . . .").

Furthermore, even assuming arguendo Mr. Seibert is an acceptable medical source, his report does not clearly establish

---

[2] https://www.gvsu.edu/cms4/asset/92386C7F-BF75-96ED-67D9FAA81701D122/comparison_between_lpc_and_llp_licenses_in_michigan.pdf ("Limited License Psychologists "[m]ay practice only under supervision of a fully licensed psychologist[.]") (last accessed Oct. 18, 2016).

that Plaintiff has a diagnosis of ADHD. Indeed, Mr. Seibert stated that Plaintiff's "responses to the Specific Learning Disabilities Behavior Checklist do not support a diagnostic impression of an [ADHD]." T.462. Later in his report, Mr. Seibert did state that on the Self-Analysis Survey, the way in which Plaintiff described "create[d] a diagnostic impression" of ADHD. T.478. However, it is clear that even if Mr. Seibert were qualified to make psychiatric diagnoses, the "diagnostic impression" on which Plaintiff attempts to rely is based solely on Plaintiff's subjective description of himself and his symptoms and limitations.

Finally, Mr. Seibert concluded that despite any "diagnostic impressions" Plaintiff created of ADHD, Plaintiff nevertheless was able to perform a variety of occupations such as a stock clerk, assembly line worker, and freight and material handler. T.474, 480. Thus, Mr. Seibert's report precludes a finding that ADHD is a severe impairment because, by finding that Plaintiff can perform a number of occupation, the report implicitly concedes that any "diagnostic impression" of ADHD "does not significantly limit [Plaintiff's] physical or mental ability to do basic work activities" and therefore is a "[n]on-severe impairment[.]" 20 C.F.R. §§ 404.1521(a), 416.921(a). In addition, at a December 2013 appointment, PA-C Herman reported that Plaintiff "feels well with no complaints. Has decided not to bother with stimulant medication [for ADHD]. Has gone this long without treatment, has learned to

control symptoms." T.548.

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's finding at step two that ADHD was not a "severe" impairment. See, e.g., Rosado v. Sullivan, 805 F. Supp. 147, 154 (S.D.N.Y. 1992) (substantial evidence supported determination of ALJ that claimant did not have a severe impairment that significantly limited her ability to do basic work activities; claimant's diabetes and hypertension were well under control, and although claimant suffered from some anxiety, she had no impairments beyond pain in some joints, possibly arthritic, which did not limit her ability to function in any significant way).

**II. Failure to Properly Assess the Medical Evidence**

As his second contention, Plaintiff asserts that the ALJ failed to properly evaluate the medical evidence, resulting in an RFC that was not supported by substantial evidence. According to Plaintiff, the ALJ "mischaracterized LP [sic] Seibert's examining opinion, relied on Dr. Newhouse's stale, non-examining review opinion, and never weighed LP [sic] Seibert's and PA-C Herman's opinions or provided explanations for rejecting them." Pl's Reply at 3; see also Pl's Mem. at 13-19.

As discussed above in Point I, and contrary to Plaintiff's contention, Mr. Seibert is not a licensed psychologist and therefore is not an acceptable medical source. In any event, Mr. Seibert's August 2012 vocational assessment report is not

inconsistent with the ALJ's ultimate conclusion that Plaintiff was not disabled, insofar as Mr. Seibert concluded that Plaintiff "was considered to be capable of successfully pursuing employment in any of the occupations listed in the test results section,[3] including that of stock clerk[.]" T.480.

Plaintiff also asserts that the ALJ erred in assessing PA-C Herman's July 2013 Physical Medical Source Statement, in which she stated that due to his "poor concentration" and "easy distract[ibility]," T.501, Plaintiff would need 2 to 3 unscheduled breaks of 5-minutes in duration for "time to refocus" during a workday. T.501. As discussed above, PA-C Herman is not an "acceptable medical source" who can provide a "medical opinion." See Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995) (discussing chiropractors, an "other source," like physician's assistants; stating that they "are expressly listed in a different section, under 'other sources' whose '[i]nformation . . . may also help us to understand how your impairment affects your ability to work.' 20 C.F.R. § 404.1513(e) (1994). Because the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide *medical* opinions") (emphasis in original; footnote omitted). Significantly, the limitations assigned by PA-C Herman are in conflict with

---

[3] See T.474 (listing the following vocational areas and specific occupations: Flight Attendant, Stock Clerk, Truck Driver, Assembly Line Worker, Bottling & Canning Machine Operator, Freight & Material Handler).

Plaintiff's subjective statements about his symptoms. As already discussed above, Plaintiff informed PA-C Herman that he was not going to try stimulant medication for ADHD-related symptoms, because he had "gone this long without treatment, [and] has learned to control his symptoms." T.548.

Finally, Plaintiff asserts that the ALJ erroneously relied on the September 2012 mental residual functional capacity assessment, see T.149-51, by non-examining review physician Dr. Newhouse. According to Dr. Newhouse, Plaintiff had "moderate" deficits in concentration, but could perform simple tasks on a sustained basis. See id. The ALJ found this opinion consistent with the evidence of record, but Plaintiff asserts that it was stale and based on an incomplete medical history. See Pl's Mem. at 17. However, as the ALJ noted, the evidence subsequently submitted by Plaintiff—namely, Mr. Seibert's report[4] and PA-C Herman's report—did not materially contradict Dr. Newhouse's opinion. As discussed above, Mr. Seibert's report explicitly acknowledged Plaintiff's limitations in maintaining concentration but stated that he was nevertheless capable of successfully performing work activity. See T.465-66, 480. Likewise, subsequent treatment notes from PA-C Herman contradict her July 2013 report. In particular, as discussed above, on December 10, 2013, Plaintiff declined

---

[4] The Commissioner notes that although Mr. Seibert's examination occurred prior to Dr. Newhouse's assessment, Mr. Seibert's report does not appear to have been part of the record at the time Dr. Newhouse conducted his review.

medication because he had learned to control his ADHD-like symptoms. In addition, Plaintiff worked for years with, and despite, the mental impairment he now alleges is disabling. There is no evidence that the limitations caused by this alleged impairment worsened at or near the time work was ceased; rather, Plaintiff stated that his only reason for leaving his long-time job as a forklift operator was that he was getting a divorce. T.127-28.

In sum, the Court finds that the ALJ did not commit errors of law or mischaracterize the record in weighing the reports submitted by Mr. Seibert and PA-C Herman, and the opinion of non-examining review physician Dr. Newhouse.

**III. Step Four Error**

Plaintiff contends that the ALJ failed to properly assess his past relevant work at step four. As noted above, the ALJ determined that Plaintiff retained the RFC to perform "simple, rote work tasks involving 1-2 step instructions." T.114. The ALJ subsequently concluded that such restrictions did not prevent Plaintiff from performing his past work as a forklift operator as actually and generally performed. T.117. Plaintiff notes that in the Dictionary of Occupational Titles ("DOT"), the position of forklift operator (DOT 921-683-050) requires a reasoning level of two. The DOT defines reasoning level of two as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." <u>Dictionary of Occupational Titles</u>,

Vol. II, App. C, 1101.[5] Therefore, Plaintiff reasons, the ALJ's RFC assessment limiting him to performing tasks "involving 1-2 step instructions" precluded a finding that Plaintiff could perform his past relevant work.

However, as the Commissioner points out, the Second Circuit has found no "actual conflict" where there is "a discrepancy between, on the one hand, the [vocational] expert's description of the job that the claimant actually performed, and the [DOT]'s description of the job as it is performed in the national economy." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (holding that vocational expert's testimony as to the exertional requirements of claimant's past relevant work as a teacher's aide was not in conflict with description of that job in the DOT; expert relied on claimant's own description of her work, which indicated that in her past work, claimant had discretion to avoid picking up a child). Based on the foregoing, the Court cannot find that the ALJ's step four finding lacked substantial evidence to support it.

**IV. Failure to Assess the Credibility of Plaintiff's Father**

As his last point, Plaintiff claims that the ALJ did not discuss the testimony by Plaintiff's father, Mr. Kirchoff, and did not perform a credibility assessment of Mr. Kirchoff's testimony.

"In evaluating a claim for disability, an ALJ generally must

---

[5] Available at http://www.occupationalinfo.org/appendxc_1.html (last accessed Oct. 18, 2016).

consider any testimony concerning the claimant's physical [and mental] ailments and resulting RFC offered by lay witnesses during the administrative hearing." McArthur v. Comm'r of Soc. Sec., No. 3:06-CV-860 LEK/DRH, 2008 WL 4866049, at *10 (N.D.N.Y. Nov. 7, 2008) (citing 20 C.F.R. §§ 404.1513(d)-(e), 416.913(d)-(e); other citations omitted); see also Carroll v. Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (the ALJ is "required to consider evidence of pain and physical [and mental] incapacity from those who have observed plaintiff").

Plaintiff refers to Mr. Kirchoff's testimony that he was unable to follow instructions, work at a fast pace, or multi-task. T.138, 140. When he was given instructions to do more than one thing, he only could do the first thing he was asked to do. T.138. As an example, Mr. Kirchoff described Plaintiff's difficulties in feeding the family's horses, even when he was given written instructions. Id. The ALJ summarized Mr. Kirchoff's testimony as follows: "[Mr.] Kirchoff testified that his son cannot follow instructions and cannot multi-task due to his learning disability, but [he] continued to look for work every week." T.115.

Plaintiff argues that the ALJ erred by failing to assess Mr. Kirchoff's credibility, which prevents this Court from assessing the weight the ALJ gave to Mr. Kirchoff's statements, or the reasons for that weight. Defendant argues that the ALJ did not reject any of Mr. Kirchoff's testimony concerning Plaintiff's

limitations, and in fact incorporated into the RFC assessment limiting Plaintiff to simple, rote work tasks.

Simply summarizing Mr. Kirchoff's testimony is not the equivalent of the required credibility assessment. See Carson v. Colvin, No. 6:12-CV-6553(MAT), 2014 WL 1746056, at *10 (W.D.N.Y. May 1, 2014) ("Defendant argues that the ALJ, by referring to some of Plaintiff's testimony in his decision, implicitly credited it. This is insufficient to constitute the credibility assessment required by the Commissioner's regulations.") (citation omitted). The Second Circuit has, in some cases, declined to require remand where the ALJ has committed an error of law if "application of the correct legal principles to the record could lead to only one conclusion." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). This is such a case. Mr. Kirchoff's testimony that Plaintiff cannot follow instructions is not supported by the Plaintiff's own description of his symptoms to PA-C Herman. And his testimony that Plaintiff is unable to multi-task is not inconsistent with the ALJ's RFC assessment limiting Plaintiff to the performance of "simple, rote work tasks involving 1-2 step instructions." See, e.g., McKinstry v. Astrue, No. 05-10-cv-319, 2012 WL 619112, at *6 (D. Vt. Feb. 23, 2012) (finding harmless error where opinion letter not considered by ALJ provided little information, did not discuss limitations during relevant period, was inconsistent with other evidence, and was otherwise not more favorable to claimant).

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is granted, and the Commissioner's decision is affirmed. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/ Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   October 19, 2016
         Rochester, New York.